STATE OF CONNECTICUT *v.* ESTEBAN DEJESUS
(AC 30986)

Beach, Bear and West, Js.

Argued January 3—officially released April 19, 2011

*Lisa Vincent*, certified legal intern, with whom was *Elizabeth M. Inkster*, senior assistant public defender, for the appellant (defendant).

*Adam E. Mattei*, special deputy assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, *Robert M. Brennan*, senior assistant state's attorney, and *Thomas P. McEvoy*, certified legal intern, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Esteban DeJesus, appeals from the judgment of conviction, rendered after a jury trial, of two counts of conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48 and 53a-122 (a) (3), and two counts of larceny in the first degree in violation of General Statutes § 53a-122 (a) (3). On appeal, the defendant claims that the trial court (1) abused its discretion by admitting certain evidence, (2) abused its discretion by allowing a coconspirator to give opinion testimony as to an ultimate issue of fact and (3) erred when it instructed the jury regarding the *Pinkerton*[1] doctrine of vicarious liability. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In October, 2007, the state police began an investigation into an operation in which stolen vehicles were being imported from New York and sold in Connecticut. Detective Richard Van Tine received information from an informant about a stolen Cadillac Escalade located in Bridgeport. After following up on the informant's tip, Van Tine and Sergeant Robert Kenney discovered that the Escalade was stolen from New York and had a fraudulent license plate, an altered vehicle identification number and a fraudulent title. As a result, the vehicle's owner, Edwin Vasquez, was arrested.

Vasquez informed the police that he had purchased the stolen Escalade from a seller in the Bronx, New

[1] See *Pinkerton* v. *United States*, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946).

York. Vasquez further informed the police that an individual named Eddie Torres also acquired stolen vehicles from New York. The police spoke to Torres and learned that he had purchased two stolen vehicles that had been imported from New York, both of which had altered vehicle identification numbers. Upon further investigation, the police learned that an individual named Edwin Gonzales facilitated the sale of the stolen vehicles to both Vasquez and Torres.

Van Tine then asked Detective Orlando Rodriguez to go undercover and pose as a buyer who wanted to purchase a stolen vehicle. Rodriguez spoke to a confidential informant who put him in contact with Gonzales. On February 1, 2008, Rodriguez met with the confidential informant and Gonzales in Bridgeport. At the meeting, Rodriguez told Gonzales that he wanted to purchase a "retagged"[2] Cadillac Escalade. Rodriguez also expressed to Gonzales his concern about registering the stolen vehicle. Gonzales responded that he had "nothing to worry about, [because] people in New York, people I work for, will take care of it, the registration, everything is [going to] look like the vehicle is new, you have no worries, you'll have the paperwork for it, identification for it, the titles for [it], you'll have no problem registering that vehicle anywhere in the United States except New York." After discussing the price of the vehicle, Gonzales told Rodriguez that he would see if he could find an Escalade and contact Rodriguez later in the week.

---

[2] Retagging is a process that conceals the fact that a vehicle is stolen. After a vehicle is stolen, its windshield is removed, providing access to the vehicle identification number. The vehicle identification number is altered or replaced with a number that belongs to a legitimate vehicle. The windshield is then replaced and resealed; rubber caulk is used to seal the windshield in place and blue masking tape is placed around the perimeter of the windshield so the caulk is not disturbed while it dries. After this process, counterfeit documents are created and used to register the stolen vehicle.

The confidential informant contacted Rodriguez a few days later and informed him that Gonzales had an Escalade to sell him. On February 4, 2008, Rodriguez met with the confidential informant and Gonzales to discuss the transaction. Gonzales informed Rodriguez that he had both an Escalade and a Nissan Murano available for a total cost of $20,500, and Rodriguez agreed to purchase both vehicles. Gonzales agreed to pick up both vehicles from New York and instructed Rodriguez to meet him at a rest stop on Interstate 95 in Fairfield in a few hours to complete the transaction. Rodriguez then informed his supervisors of the location of the sale so they could intercept the transaction.

After Rodriguez' meeting with Gonzales concluded, Gonzales and the confidential informant traveled to New York, in a Lexus, to pick up the Escalade and the Murano. Once in New York, Gonzales and the confidential informant met with Juan Contreras, Juan Barrone and the defendant. Contreras and Barrone arrived in a BMW, and the defendant arrived in the stolen Escalade that was to be sold to Rodriguez. The defendant drove the Escalade through a car wash and then drove to a second location where the stolen Murano was located. Once the Murano was retrieved, the defendant, the confidential informant, Gonzales, Contreras and Barrone went to a gasoline station at which Contreras replaced the Murano's license plate with a dealer plate. The dealer plate, XC40, rightfully belonged to New Country Motors, a car dealership at which the defendant previously had been employed. After affixing the dealer plate to the Murano, the defendant and the others traveled to Connecticut.[3] Upon arriving at the rest stop, the defendant and Barrone went into a restaurant while

---

[3] The confidential informant drove the Lexus, Gonzales drove the Murano, Barrone drove the Escalade and Contreras drove the BMW with the defendant sitting in the passenger's seat.

Gonzales, Contreras and the confidential informant waited for Rodriguez to arrive with the money.

The police, who had set up surveillance on the rest stop, moved in and arrested the defendant, Barrone, Contreras and Gonzales. The officer who arrested the defendant noticed that he had several pieces of blue tape wrapped around his fingers. The officer also noticed that the same kind of blue tape was affixed around the perimeter of the windshields of both the Murano and the Escalade. Following the arrests, the police searched the BMW. Inside the BMW, the police discovered the counterfeit titles to the Murano and the Escalade that Gonzales had promised to Rodriguez. Above the passenger seat where the defendant was sitting, the police found two applications for temporary license plates with false information. The police also discovered two forged temporary license plates on the floor of the BMW and a package of rubber molding used to replace and secure windshield glass, along with a receipt for the molding issued from a store in New York.

The defendant was charged with two counts of conspiracy to commit larceny in the first degree and two counts of larceny in the first degree.[4] On October 14, 2008, the jury returned a verdict finding the defendant guilty on all counts. The court then sentenced the defendant to a total effective term of ten years incarceration, execution suspended after five years, with three years of probation.[5] This appeal followed. Additional facts will be set forth as necessary.

---

[4] Counts one and three pertained to the defendant's involvement with the theft of the Escalade, and counts two and four pertained to the defendant's involvement with the theft of the Murano. The theories of liability regarding the larceny of the Escalade included principal, accessory, and coconspirator liability pursuant to *Pinkerton*. The theories of liability regarding the larceny of the Murano included accessory and coconspirator liability pursuant to *Pinkerton*.

[5] For the defendant's conviction of the two counts of larceny, he was sentenced to five years incarceration, execution suspended after two and

I

The defendant first argues that the court abused its discretion when it admitted evidence of the XC40 dealer plate. Specifically, he contends that such evidence was inadmissible because it lacked relevance, and any probative value it may have had was outweighed by its unfairly prejudicial effect.[6] We are not persuaded.

The following additional facts are necessary to our resolution of the defendant's claim. On September 29, 2008, the defendant filed a motion in limine[7] seeking

one-half years, with three years of probation, to run consecutively. The court merged the defendant's conviction of the two counts of conspiracy and sentenced the defendant to five years incarceration, execution suspended after two and one-half years, to run concurrently with the larceny sentence.

[6] The defendant also argues that the court abused its discretion when it admitted evidence of the XC40 dealer plate because it was inadmissible uncharged misconduct evidence. Specifically, the defendant argues that evidence of the XC40 dealer plate was offered as uncharged misconduct evidence because the jury would have had to infer that the defendant stole it, and, as a result, the jury logically would have concluded that because the defendant stole the dealer plate he was therefore more likely to have participated in the theft of the two vehicles.

We disagree with the defendant's characterization that evidence of the XC40 dealer plate was offered as uncharged misconduct evidence. Nowhere in any of the defendant's motions in limine does he specifically characterize the evidence of the XC40 dealer plate as uncharged misconduct evidence. In fact, the defendant expressly stated that "[t]he prior misconduct was stealing [the Honda] . . . ." "This court will not review issues of law that are raised for the first time on appeal. . . . We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was *distinctly* raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . Claims that were not *distinctly* raised at trial are not reviewable on appeal." (Emphasis added; internal quotation marks omitted.) *Weihing* v. *Dodsworth*, 100 Conn. App. 29, 34 n.4, 917 A.2d 53 (2007). Therefore, we limit our review of the defendant's claim to the extent that he argues that evidence of the XC40 dealer plate was irrelevant or that any probative of the plate was outweighed by its prejudicial effect.

[7] The defendant filed an additional motion in limine on October 6, 2008, which did not pertain to evidence of the XC40 dealer plate that is the subject of his claim on appeal.

to "exclude as evidence . . . any crimes, misconduct or wrongdoing other than the instant crime with which the defendant is charged in this case . . . ." The defendant based his motion on the grounds that the probative value of any such evidence offered was outweighed by the potential of undue prejudice, the proffered evidence was irrelevant, the state had insufficient proof that he committed or was connected with the " 'other crime' " or misconduct and that the " 'other crime' " or misconduct was too far removed in time from the crimes he was charged with in this case.

On October 1, 2008, the parties argued the motion before the court. The defendant argued that the motion pertained to two separate occurrences. First, the defendant sought to preclude the admission of evidence of larceny charges brought against him related to the prior theft of a Honda, arguing that the prejudicial effect of such evidence outweighed any probative value. Second, the defendant sought to preclude evidence of the XC40 dealer plate that had belonged to a car dealership at which the defendant previously had been employed. The defendant argued that it was "highly prejudicial that he worked at a place, and this license plate happen[ed] to turn up to be connected to the place that he worked, and it was on a stolen vehicle. So . . . I think there's an issue of prejudice versus probative value, which, I submit, there is no probative value and it's highly prejudicial. That's all I have to say regarding that matter."[8] The state responded by arguing that the evidence was being offered to "prove that he [engaged

[8] The defendant also argued that, because the XC40 dealer plate was not registered to New Country Motors until more than one year after his employment was terminated, the state did not have a good faith basis to offer such evidence. The defendant does not raise this argument on appeal, and, thus, we do not consider it; in any event, there seems to be little question but that the state had information regarding the plate prior to the questions in issue. We do consider, however, the closely related argument regarding relevance in part I A of this opinion.

in the charged conduct] . . . [and] to show that he had the knowledge of stolen cars, and that it's common scheme or practice of people stealing cars to work with others and to take cars, that he has knowledge in this area. Since we have to show that he had knowledge, the fact that other people may testify about his participating in other auto theft schemes goes directly to the intent the state is required to show, that he was not simply a passenger in this vehicle, he was one with knowledge of what was going on, and he was a participant in the coconspiracy."

The court, in ruling on the motion, stated that it was "going to allow testimony concerning the license plate into evidence. It is relevant to a material fact in the trial, certainly whether the defendant had the intent to commit the crime of larceny, which is a specific intent crime, and also the dual intent in the conspiracy, the intent to agree and the intent to commit the crime that's the object of the conspiracy. However, I will allow testimony only to the extent that the defendant was found driving a car with that plate, which did not belong on that car, and that the plate belonged to his employer at that time. I believe it is relevant as to intent, the pattern of behavior and an attitude toward motor vehicles . . . that may be considered indicative of the defendant's state of mind. It also is relevant on the issue of opportunity, access to the plate may be considered as opportunity to commit the crime in question. I find that the probative value of it outweighs its prejudicial value."

Following the court's ruling, the parties acknowledged that there was some confusion regarding the charges stemming from the stolen Honda and the XC40 dealer plate. The parties clarified that the defendant previously was caught driving the stolen Honda, not the stolen Murano, and that the XC40 dealer plate was

located on the Murano, not the Honda. After this clarification, the court ruled that it was precluding the state from presenting any evidence regarding the prior act of the defendant stealing the Honda. The court also stated, however, that its ruling allowing the state to introduce evidence regarding the XC40 dealer plate still stood because it was "relevant to a material fact . . . ."

The state later presented evidence regarding the XC40 dealer plate. Detective Paula Barunetto testified that, following the defendant's arrest, she conducted an investigation that revealed that the plate was registered to New Country Motors and that the defendant previously had been employed there. Barunetto opined that, based on her training and experience, a former employee would have better access than a stranger to the dealer plates because of his familiarity with the dealership and the knowledge of its layout. The defendant's former manager at New Country Motors, David Delaney, also testified that, as a former employee, the defendant would have had better access than a stranger to the dealer plates because he was aware of where they were located and on what vehicles they were kept.

We begin by setting forth our standard of review. "The applicable standard of review for evidentiary challenges is well established. We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Citations omitted; internal quotation marks omitted.)

*State* v. *Snelgrove*, 288 Conn. 742, 758, 954 A.2d 165 (2008).

A

The defendant first claims that evidence regarding the XC40 dealer plate was irrelevant because the plate was not issued to New Country Motors until more than one year after his employment there terminated. We disagree.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. . . . The trial court has wide discretion to determine the relevancy of evidence and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 23, 1 A.3d 76 (2010).

The defendant was charged with two counts of conspiracy to commit larceny in the first degree in violation of §§ 53a-48 and 53a-122 (a) (3). "Our Supreme Court has held that [t]o establish the crime of conspiracy under § 53a-48 . . . it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance

of the conspiracy by any one of the conspirators. The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . Further, the prosecution must show both that the conspirators intended to agree and that they intended to commit the elements of the underlying offense." (Internal quotation marks omitted.) *State* v. *Gentile*, 75 Conn. App. 839, 862–63, 818 A.2d 88, cert. denied, 263 Conn. 926, 823 A.2d 1218 (2003). In conspiracy prosecutions, direct evidence of an accused's mental state is often unavailable and thus intent commonly is proven by circumstantial evidence. *State* v. *Kenney*, 53 Conn. App. 305, 312, 730 A.2d 119, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999). Therefore, "intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) Id.

At trial, the defendant maintained his innocence and argued that, at most, he merely was present throughout the course of the larceny of the two vehicles. The state had the burden of proving beyond a reasonable doubt that the defendant intended to agree to play a role in stealing the two vehicles. Therefore, evidence regarding the XC40 dealer plate was relevant, though hardly conclusive, because it had a logical tendency to show a connection between the defendant and the larcenous scheme; it also tended, though not overwhelmingly, to show the intent necessary to support a finding of guilty of conspiracy to commit larceny. As the court stated, evidence of the plate was "relevant to a material fact in the trial . . . the dual intent in the conspiracy, the intent to agree and the intent to commit the crime that's the object of the conspiracy." The facts that the XC40 plate may well have been stolen from a car dealership at which the defendant previously worked and happened to be located on the stolen Murano tend to disprove that the defendant was merely an innocent

bystander. It also tended to prove, even if somewhat remotely, that the defendant intended to participate in a conspiracy. Accordingly, although the weight of the evidence may have been at issue, we conclude that the court did not abuse its discretion in determining that it was relevant.[9]

## B

The defendant also claims that the court abused its discretion by allowing evidence of the XC40 dealer plate because any probative value of the evidence was outweighed by its unfairly prejudicial effect. We conclude that the court did not abuse its discretion in its resolution of the issue.

"Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence. . . . Unfair prejudice occurs where the facts offered may unduly arouse the jury's emotions, hostility or sympathy . . . . [T]he test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury . . . . Such undue prejudice is not measured by the significance of the evidence which is relevant but by the impact of that which is extraneous." (Citations omitted; internal quotation marks omitted.) *State* v. *Douglas*, 126 Conn. App. 192, 219, 11 A.3d 699 (2011).

The defendant argues that the prejudicial effect of the evidence of the XC40 dealer plate outweighed its

[9] The defendant also claims that evidence of the XC40 dealer plate was irrelevant because the state failed to offer any evidence to prove that he actually stole the plate. Having concluded that the court did not abuse its discretion in determining that evidence of the XC40 dealer plate was relevant on the basis of the evidence that *was* presented, we need not address the defendant's further argument.

probative value because if the jury determined that he had stolen the plate, then, as a result, it may have impermissibly inferred that it was more probable that he participated in the crimes with which he was charged.[10] That is, the argument goes, the jury may have inferred that someone who stole a dealer plate would be the sort of person who would steal cars. As the court determined, evidence of the dealer plate was relevant to prove the intent required to convict the defendant of both the conspiracy and the larceny charges. Although it was conceivable that the jury could have drawn impermissible inferences from the introduction of evidence regarding the dealer plate, the court determined that the risk of such prejudice did not outweigh the probative value of the evidence. As this court previously has stated, "[t]he determination of whether the prejudicial impact of evidence outweighs its probative value is left to the sound discretion of the trial court . . . and is subject to reversal only [when] an abuse of discretion is manifest or injustice appears to have been done." (Internal quotation marks omitted.) *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 696, 981 A.2d 497 (2009), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010). Under the facts of this case, we cannot conclude that the court abused its discretion in determining that the probative value of the evidence outweighed its prejudicial effect.

---

[10] The defendant also argues that the prejudicial effect of the evidence of the XC40 dealer plate outweighed its probative value because the state did not prove that he actually stole the plate and, thus, that the evidence misled the jury. Our Supreme Court has stated that "[e]vidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Cecil J.*, 291 Conn. 813, 823, 970 A.2d 710 (2009). As we stated in part I A of this opinion, evidence of the dealer plate tended to support a relevant fact, namely, whether the defendant had the requisite intent required to be convicted of a conspiracy. Accordingly, we reject this aspect of the defendant's claim.

## II

The defendant next claims that the court abused its discretion when it allowed a coconspirator to give impermissible opinion testimony regarding an ultimate issue of fact. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. On October 6, 2008, the state offered Gonzales as a witness. On direct examination, the state asked Gonzales if he knew whether the defendant was "part of [the] group" of individuals who were arrested at the rest stop on February 4, 2008. Defense counsel objected, arguing that the state was "asking if [the defendant is] a member of the group. I would . . . submit . . . that this is the ultimate issue of fact . . . ." The state responded: "I believe I asked him if he was part of this group. Whether he's part of the conspiracy, I didn't ask him that." The court overruled defense counsel's objection, and the state continued questioning Gonzales. The following colloquy ensued:

"[The Prosecutor]: Was there any conversation between the defendant and Mr. Contreras?

"[The Witness]: No.

"[The Prosecutor]: Do you know if they know each other?

"[The Witness]: I don't know if they know each other, I imagine that they do, but I'm not sure.

"[The Prosecutor]: All right, why do you imagine that they know each other?

"[The Witness]: Because he was the one that was driving the Escalade, I imagine so.

"[The Prosecutor]: Would you expect Mr. Contreras to have somebody that was not part of this group to drive the Escalade?

"[The Witness]: No, I don't—I don't know what business they have or how they manage their business in that way.

"[The Prosecutor]: But would you expect him to have someone that wasn't part of the group driving the Escalade? . . .

"[The Witness]: No, I imagine that if he wasn't part of the group, he wouldn't drive the car.

"[The Prosecutor]: And would you expect someone that was not part of the group to be there when they're changing a plate on the vehicle?

"[The Witness]: No.

"[The Prosecutor]: Would you expect someone who's not part of the group to be present when you were to exchange cash for the retagged vehicles? . . .

"[The Witness]: No."

The defendant argues that this line of questioning regarding whether Gonzales knew if the defendant was "part of [the] group" of individuals who were arrested at the rest stop on February 4, 2008, addressed an ultimate issue of fact, namely, whether the defendant was guilty of conspiracy to commit larceny. The defendant contends, therefore, that the court improperly allowed Gonzales' testimony because it constituted an impermissible lay opinion in which he improperly testified to an ultimate issue of fact. We disagree.

We begin by setting forth our standard of review. "Because of the wide range of matters on which lay witnesses are permitted to give their opinion, the admissibility of such evidence rests in the sound discretion of the trial court, and the exercise of that discretion, unless abused, will not constitute reversible error." (Internal quotation marks omitted.) *State* v. *Finan*, 275 Conn. 60, 65–66, 881 A.2d 187 (2005).

First, we conclude that Gonzales' testimony was not an impermissible lay opinion. Connecticut Code of Evidence § 7-1 provides: "If a witness is not testifying as an expert, the witness may not testify in the form of an opinion, unless the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." Here, Gonzales' testimony was rationally based on his perception of the circumstances as he perceived them on the night of February 4, 2008, and when he observed prior conduct in New York.[11] Furthermore, Gonzales' testimony was helpful to the determination of a fact in issue, namely, whether the defendant had the intent necessary to be convicted of conspiracy. Therefore, his testimony was a permissible lay opinion pursuant to § 7-1.

Second, we conclude that Gonzales' testimony did not impermissibly address an ultimate issue of fact. Connecticut Code of Evidence § 7-3 (a) provides in relevant part that "[t]estimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact . . . ." "[T]he phrase ultimate issue is not amenable to easy definition. . . . It is improper, [however] for a witness to offer testimony that essentially constitutes a legal opinion about the guilt of the defendant." (Internal quotation marks omitted.) *State* v. *Morocho*, 93 Conn. App. 205, 223, 888 A.2d 164, cert. denied, 277 Conn. 915, 895 A.2d 792 (2006).

The defendant argues that the state's questioning of Gonzales regarding whether the defendant was "part of [the] group" essentially was the same as asking Gonzales if the defendant was part of the conspiracy, and,

---

[11] Lay opinion is admissible when, inter alia, the "opinion" is the shorthand expression of a number of facts and conditions, observed or sensed by the witness, which are so numerous, complex or evanescent that they cannot be fully recollected or detailed individually. See C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 7.1.2, p. 403.

thus, Gonzales impermissibly testified to an ultimate issue of fact. Here, we cannot conclude that Gonzales impermissibly offered opinion testimony regarding an ultimate issue of fact. Although it is true that evidence of association is relevant to proving participation in a conspiracy; see *State* v. *Torres*, 47 Conn. App. 149, 158–59, 702 A.2d 142 (1997), cert. denied, 243 Conn. 963, 707 A.2d 1267 (1998); association, by itself, does not necessarily constitute intentional participation in a conspiracy. One can be "with" a group without being a conspirator, even if others in the group are, in fact, conspirators. Gonzales' testimony that the defendant was "part of [the] group" is different from opining as to whether the defendant intended to agree to engage in a larceny or whether he intended to actually commit the larceny, both of which are ultimate issues of fact for the jury to decide. See *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 533, 733 A.2d 197 (1999). Therefore, although the jury reasonably may have found Gonzales' testimony relevant to the issue of whether the defendant participated in the conspiracy, his testimony did not constitute an opinion about the ultimate guilt of the defendant. Accordingly, the court did not abuse its discretion in allowing Gonzales' testimony.

### III

The defendant finally claims that the court erred when it instructed the jury regarding the *Pinkerton* doctrine of vicarious liability. Specifically, he claims that the application of the *Pinkerton* doctrine to the facts of this case violated his right to due process. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. When instructing the jury regarding the *Pinkerton* theory of liability on the two counts of larceny; see footnote 4 of this opinion; the court stated: "The final theory of liability . . . is

. . . under what we call the *Pinkerton* rule. There's a doctrine in our law which provides that once a defendant's participation in a conspiracy is established, he's responsible for each of the criminal acts of the other coconspirators which are within the scope and furtherance of the conspiracy. Therefore, you would first have to find the defendant guilty of conspiracy to commit larceny one in order to consider this *Pinkerton* theory of liability. . . .

"The rule means that in this case, if you conclude that the defendant is, in fact, guilty of conspiracy to commit larceny one, as I have defined that term to you previously, but he did not commit larceny one as a principal or as an accessory, then you must determine whether there is sufficient evidence that has been provided to you beyond a reasonable doubt that another member of the same conspiracy did, in fact, commit the crime of larceny one.

"If a coconspirator did commit larceny one, and if that larceny one was in the scope of and in furtherance of the conspiracy for which you concluded the defendant was a member, then the defendant would be guilty of larceny one as well. In summary, if you conclude the defendant was a member of a conspiracy as has been charged in the first count of the information beyond a reasonable doubt, and that a coconspirator committed the crime of larceny one, then if you would further conclude beyond a reasonable doubt the larceny one was within the scope of and in furtherance of the conspiracy then each and every member of the conspiracy would be guilty of larceny one as charged, whether or not they actually committed the larceny one."

The defendant does not complain that the instruction misstated the law; rather, he claims that the instruction should not have been given at all. He did not preserve this claim and thus seeks review pursuant to *State* v.

*Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[12] The defendant's claim satisfies the first two prongs of *Golding* because the record is adequate for review and it is of constitutional magnitude. The defendant's claim, however, fails under the third prong of *Golding* because there was no clear constitutional violation and the application of *Pinkerton,* under the facts of this case, did not deprive him of a fair trial.

"In *Pinkerton* v. *United States,* [328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946)], the United States Supreme Court concluded that under the federal common law, a conspirator may be held liable for criminal offenses committed by a coconspirator if those offenses are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy." *State* v. *Diaz,* 237 Conn. 518, 526, 679 A.2d 902 (1996). In *State* v. *Walton,* 227 Conn. 32, 45–46, 630 A.2d 990 (1993), our Supreme Court adopted the principal of vicarious coconspirator liability set forth in *Pinkerton.* The court reasoned that "the rationale of *Pinkerton* liability . . . is essentially that, because the conspirator played a necessary part in setting in motion a discrete course of criminal conduct, he should be held responsible, within appropriate limits, for the crimes committed as a natural and probable result of that course of conduct." (Internal quotation marks omitted.) *State* v. *Diaz,* supra, 528.

On the facts of this case, we do not conclude that the court erred in instructing the jury regarding the

[12] Pursuant to *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40.

*Pinkerton* doctrine of vicarious liability. The defendant argues that the application of the *Pinkerton* doctrine in the present case violated his due process rights because there was no evidence to prove that the defendant ever agreed or intended to agree to participate in a larceny before it actually was completed.[13] To the contrary, the evidence presented by the state reasonably supported the proposition that the defendant was an involved member of the conspiracy who actively participated in the larceny. The state offered the testimony of Gonzales, who opined that the defendant was "part of [the] group" of people who were arrested for the theft of the Murano and Escalade. The state further offered evidence of the XC40 dealer plate that was stolen from the defendant's former employer and affixed to the stolen Murano. Also, the state presented evidence that established that the defendant was driving the stolen Escalade in New York, and evidence tending to show that he removed and replaced the windshields of the two vehicles during the process of their thefts. Most fundamentally, he arrived at the scene of the arrest with two stolen cars, false identifying information and a broker of stolen cars. On the basis of this evidence, the jury reasonably could have concluded that the defendant both agreed to and intended to agree to participate in the larceny of the vehicles. "Thus, in circumstances where, as here, the defendant was a full partner in the illicit venture and the coconspirator conduct for which the state has sought to hold him responsible was integral to the achievement of the conspiracy's objectives, the defendant cannot

---

[13] The defendant also argues that the application of the *Pinkerton* doctrine in the present case violated his due process rights because the coconspirators did not rely on his participation in the conspiracy, nor was his involvement necessary to complete the theft of the two vehicles. The defendant has provided no authority to support the proposition that *Pinkerton* or its progeny requires that a conspirator's participation in a conspiracy be relied on by his coconspirators or that a conspirator's participation in a conspiracy be necessary in order to complete the underlying offense. Therefore, we reject this aspect of the defendant's claim.

reasonably complain that it is unfair to hold him vicariously liable, under the *Pinkerton* doctrine, for such criminal conduct." *State* v. *Diaz*, supra, 237 Conn. 529.

The defendant also notes, however, our Supreme Court's statement that "there may be occasions when it would be unreasonable to hold a defendant criminally liable for offenses committed by his coconspirators even though the state has demonstrated technical compliance with the *Pinkerton* rule." Id., 530. The defendant argues that the present case is one such case where application of the *Pinkerton* doctrine would be unreasonable because his involvement in the crime was too attenuated and remote. We do not agree that the facts of this case qualify under the rare exception where "the nexus between the defendant's role in the conspiracy and the illegal conduct of a coconspirator is so attenuated or remote, notwithstanding the fact that the latter's actions were a natural consequence of the unlawful agreement, that it would be unjust to hold the defendant responsible for the criminal conduct of his coconspirator." Id. As we explained above, there was considerable evidence from which the jury reasonably could have inferred that the defendant directly participated in the theft of the Escalade and the Murano. Additionally, we cannot conclude that the application of *Pinkerton* is unreasonable where the defendant was convicted of the very crime that was the underlying offense of the conspiracy, the larceny of the two vehicles. The evidence, viewed favorably to the state, supports the notion that the defendant's role was anything but attenuated and remote. Accordingly, we disagree with the defendant's claim that the court erred in instructing the jury regarding *Pinkerton* liability.

The judgment is affirmed.

In this opinion the other judges concurred.